Thank you very much for waiting. The next case on the calendar is United States v. David and Stefani. Good morning, Your Honors. Gretchen Fusini on behalf of Anthony Stefani Appellant. If it please the Court. Are you going to split the argument? Yes, Your Honor. How do you want to do that? I'm going to take seven and a half minutes or eight minutes more or less and Mr. Weed will take the remainder. And maybe leave a little, as they say in Starbucks, a little room for milk at the top. Let's say a little room for rebuttal. Yes, Your Honor. Absolutely. In the case of Mr. Stefani, he was convicted of conspiracy to defraud the United States as well as the fraudulent preparation of tax returns at the Western Tax Service. The issue that we think is really critical in this is the admissibility of the statistical information in the form of charts that was presented in the government-in-chief's case. There was an objection to this testimony. And we do feel that it was inherently a reversible error to admit it because of its hearsay status. Let me ask you to be specific. As I read your brief, it seemed to me, although it was phrased in broad terms, it really all came down to the use of the national, the compilation of all 129 million tax returns filed across the country. Are the other charts being objected to? Yes, the charts are being objected to. Everything was objected to. But the argument I read seemed to have to do with we want to be able to inspect the 129 million tax returns. Well, Your Honor, the argument is housed in terms of the fact that Rule 1006, the rule that the government used in order to argue the chart's admissibility, basically was a compilation of 129 million tax returns as the underlying documents. But that's not something that actually was compiled for this case. That was something contained in publication. And I've lost the number. But, heck, I've seen that number myself lots of times. They compile averages based on all the returns filed across the country. Why doesn't that come in as a public report? Well, because it doesn't come in as a public report under 1006. Well, not under 1006. But there's another rule that covers public reports. Well, our position is that to come in as a public report, it has to comply with the findings of accuracy and trustworthiness of the underlying documents. The underlying documents are not publication 1304. The underlying documents are the 129 million tax returns that the data has been snatched from. Well, that's exactly right. The publication 304 isn't saying that those are God's truth. They're saying people have filed their tax returns, and this is the compilation of the tax returns they've filed. Yes, that's true. However, in this particular case, they were admitted to show the truth of the matter asserted in those documents. They were admitted to show the truth. The truth of what? What exactly were they admitted to show the truth of? They were admitted to show the comparisons between returns that Stefani had prepared as untruthful and inflated because these are the national statistics that we have. But the national statistics... But those are the national statistics. But the national statistics still, in our position, has to compare oranges to oranges and apples to apples. What's different about them? Here you have... This is the national average for returns filed. This is your client's returns filed. What's different? The national average is a compilation of people who barely are filing just because they meet the threshold minimum requirements to file. Let me stop you again. None of that has to do with the accuracy of the national compilation. You're now trying to argue to the weight of it like it's not an accurate comparison. We don't... But the truth, the truth of the national compilation is not challenged at all. Well, Your Honor, I think if we go back to the language of the U.S. Supreme Court in Holland when it said that he needs to guard against letting numbers and figures and computations and statistics take on a life of their own because they're only as good as the underlying materials that they represent. No one believes that the data has been audited, relates to the same geographical area, has the same income...  What in heaven's name does geographical area have to do with the accuracy of the compilation submitted by the government? Because we believe that it would ultimately determine the economic status of people. And based on that, there may be either a higher deduction, itemized deductions, charitable contributions... than the accuracy of the numbers. The numbers are what they are. And I don't yet see a ground for thinking that the government made a mistake in compiling the numbers as to what the averages are. And then you can argue, OK, but these averages don't tell us very much. And those are sensible arguments. But that doesn't mean it's not admissible. And then you make the arguments to the jury, but, you know, this doesn't tell us very much. Mr. David was aware before the chart was presented that the government was going to take this approach, was he not? Mr. Stefani. Yes, there had been a motion. OK. There had been a motion to... So there was some time and had... Indeed, this may have happened. Was there specific comment, objections to items in the chart as to accuracy and so on? Yes, absolutely, Your Honor. And I've included that in our excerpts of records. There was a motion to exclude. So for purposes of the jury, the jury certainly would have had in mind the fact that your client objected, number one, to its being introduced. But in any event, you've got to look at all this stuff with a grain of salt. It maybe didn't include just the two coasts. You've got a different situation here. You've got different economic levels and so on and so on. So you raised the issue in the mind of the jury about what this stood for, what relevance it had to this case, did you not? I wasn't the trial counsel. No, I understand you didn't personally, but I mean the trial counsel did raise this, right? Relevancy, yes. OK. Yes. Just briefly, in 32 more seconds, we would also indicate, as we indicated in our brief, that the relevancy is problematical because unless there is the comparison of similarities, the introduction of these statistical averages do not tend to prove or disprove. And that's abuse of discretion as to whether or not. On that ground, the issue of sort of admissibility is abuse of discretion. That's the standard of review. Pardon me, Your Honor, I'm sorry. The standard of review on which we address that question is abuse of discretion by the trial judge. Is that correct? Yes, that's correct, Your Honor. OK. And we'll hear from your co-counsel. Thank you. We'll give you a chance to respond. Good morning, Your Honors. My name is Arthur Weed. I'm the attorney for Kelly David. His last name is David. It's a little confusing. As you know, this is a tax preparation case, fraudulent returns. And my client took the stand. And prior to that, the government had sought and obtained an order that if he did that, he could be impeached with his prior theft conviction. And that's what happened. Now, during his direct testimony, in response to questioning by his trial counsel, trial counsel said, oh, by the way, Mr. David, have you been convicted of anything other than this? And he said, yes, sir, I have. You know, theft in 1999. Now, yesterday, the government filed a Rule 28J letter in which they call the court's attention to Oler versus U.S., which I have to say, that case was a gap in my knowledge. And I apologize to the court that I didn't know about that case until yesterday, because that makes a big difference. There, the Supreme Court said, as you know, if a defendant's lawyer asks him on direct examination, were you convicted of a prior offense? He can't raise that as an issue on appeal. Now, I did that anyway. But what I would refer to is what the government has said in their Rule 28J letter, which was filed yesterday. If I might read from this, Oler, this is their letter of yesterday. Oler forecloses defendant from challenging the district court's in limine ruling as to the admissibility of the conviction, though not from challenging the extent of the government's cross-examination on this point. Now, when did the court make its in limine ruling that it was going to admit this earlier conviction? Before testimony by Mr. David? Yes, sir. So the questioning by his own counsel, I don't know whether it was you or somebody else, is defensive. They're anticipating that this is coming in. Right. It was done to mollify the effect of it. Sure, sure. So if their initial ruling was wrong, it's a little hard to hold it against Mr. David that his counsel would engage in defensive strategy. Well, but that nonetheless is what happened in Oler. And, of course, I agree totally with the four justices who dissented. And they said exactly what you just said. But that does appear to be the law. But what I would like to address is the prejudicial effect of the cross-examination that occurred after that. In other words, my client's trial lawyer said, well, you were convicted, weren't you? And he said, yes. And that was the extent of it. But then when it came to government's turn to cross-examine Mr. David, they went into a big, lengthy dissertation about what the specific facts were about that prior theft conviction. And very much to my client's chagrin, those facts made him appear to be a very sophisticated con artist. You know, I hate to say that, but that's true. And the reason I'm saying that is because the circumstances that were elicited on cross-examination by the government were very damaging. Now, despite the fact that Oler says if defense counsel elicited the fact of the conviction, it can't be appealed, I would respectfully suggest that this court can nonetheless determine whether that conviction should have been admitted in the first place or not. In other words, I can't say, well, I want to see this case reversed based on the improper admission of the prior conviction. I can't say that under Oler. But I think in determining the one issue that we can address, and that is the propriety of the cross-examination, that this court can consider whether the ruling in limine by the district court. Excuse me, let's assume that we go with you so far as to hold that the cross-examination was impermissible in bringing out all the gory details that turn him into a sophisticated, deceitful person. Yes, sir. It's not shoplifting, but it's a financial theft with some sophistication and some deceit. So let's assume that that's improper. How do you answer sort of the harmlessness question? There's a lot of other evidence against your client. Why was this harmful error to allow that cross-examination? That's true. There was a lot of evidence. But throughout the trial, he said, I did the best I could. You know, I tried to help these people. I did not have criminal intent. As a matter of fact, didn't your client suggest, state, in effect, you know, I'm an honest guy. You can really count on me. There are so many words to that effect. Yes, sir, he did. And under those circumstances, does not that open the cross-examination more than you are suggesting? In other words, this is impeachment evidence that's brought in to show not only that there was a prior conviction, but the nature of that conviction that would tend to undermine your client's assurances about his integrity. Yes, sir, that's correct. And there I would call the court's attention to the other or the case that was cited in the other Rule 28J letter that the government filed, which is a recent Ninth Circuit case, United States versus Ozazua. If I'm saying that one right now, Ozazua seems to collect cases not just from this circuit, but from other circuits as well that have dealt with that issue that you were just talking about. And that is, when has the defendant opened the door? And see, in this case, our particular case here, David's attorney approached, had a sidebar conference with the trial judge and said, Your Honor, I'm objecting to all of this extraneous stuff coming in about the sophistication of the prior theft conviction. The judge specifically said he opened the door when he said, I would never advise anyone to file a fraudulent or whatever it was that he said. And at the end of the day, though, don't we get down to is this an abuse of discretion and was this harmless error? There was a lot of evidence that was put in in this case, very damning evidence to your client and to Mr. Stefani. At the end of the day, is it really a difficult task to overturn a case based upon an evidentiary ruling or a cross-examination given the facts of this case? Well, it would be easy to say that it's harmless error. But there is an issue, I think, that needs to be addressed. What is that? That is, when the door is open, so to speak, is it opened by the person saying, OK, I would never do anything like this, you know, that I'm an honest person? Or does it have to be opened by a specific reference to the prior offense? Now, all of the cases that are cited in those ones deal with when the defendant made a reference to his prior conviction and tried to make it appear less than it actually was. But counsel, you're obviously an able lawyer, so let's be candid about this. If your client says, I am an honest man, I would never cheat anybody. And his counsel opens on direct the issue of the prior offense. Can you cite any case that suggests that the government could not then examine the details of that previous offense to show that the statement, I am an honest man in this hypothetical, is not true? Well, yes. The case of Sine, I think it was the United States v. Sine, which was cited in Osazua. And you think that's on all fours with this issue? Yes, it is. Because the Osazua court relied on the Sine case, where they said that in Sine, the defendant had not opened the door. Because in order to open the door to cross-examination about the facts relevant to the former conviction, the defendant has to portray an inaccurate portrait, is the way they described it. They used the term inaccurate portrait of the prior offense itself. Not an inaccurate portrait of what he's like. In other words, he could say, oh, I'm the J.C. of the year or something like that. That's not the prior offense. All of these cases seem to say that opening the door means that he says something about the prior offense, which then gives the government the right to show that that didn't happen. But counsel, in that particular case, there may have been something just related to that case that was involved. But if you have a trial where the integrity of the person is involved in many areas, and he, in effect, says, hey, I'm an honest man, by any evidence book, doesn't that open up the door to counter that with whatever evidence may be there, be it the previous offense or something else? I mean, there may be all kinds of other evidence that could be brought up that had never been discussed before in the case to show that that was a false statement. OK, the or something else, I think, is appropriate. Now, the O's 1 case or whatever, I don't think I'm going to, whatever, it starts with an O. You know what I'm talking about. That said, that as far as prior convictions are concerned, Rule 609 is what will govern that. Now, Rule 609 of the Federal Rules of Evidence specifically states that the evidence of the circumstances surrounding the prior theft are not admissible. OK, supposing the person painted an inaccurate portrait of themselves as being as having won some award or something. I'm completely honest. OK, that's what I think you're talking about there. You could use evidence of other factors than a prior criminal conviction to show that that was not true. And I would suggest that in the case that is cited by the government in their June 3rd letter, Kincade-Chauncey, that's what we have because there the evidence that was addressed in that case did not relate to prior convictions. Let's hear from the government and then we'll give both of you a chance. OK. We've taken you over time with our questions. I'm sorry. I apologize. As I've said with earlier cases, that's our problem, not yours. OK, thank you. Good morning, Your Honors. May it please the Court. Doug McCormick, United States. I'd like to briefly address Mr. Stefani's argument regarding Publication 1304. Publication 1304 was admissible as a public record under Federal Rule of Evidence 8038B because it reflected matters observed pursuant to duty imposed by law as to which matters there was a duty to report. The Internal Revenue Code, Section 6108, requires the IRS to publish and compile and publish statistical reports regarding tax return data, which is exactly what Publication 1304 is. Mr. Stefani asks the Court in essence to graft an additional requirement of accuracy and trustworthiness into 8038. There is no additional requirement other than what's in 8038. Is Publication 1304 the compilation itself or the very thing that was put up in the trial? Publication 1304 is a huge document. It reflects basically the IRS's compilation of massive amounts of data. I guess what I'm asking is did the government take the data from 1304, put it in an access form or an Excel spreadsheet, and lay it out in picking little elements of 1304? Exactly what we did with 1304 is we took the data from 1304 and presented that data to the jury in the form of several different summary charts. One of those charts compared the average charitable contribution deduction taken by the 129 million different tax returns with the tax returns prepared by each of the defendants. One of those charts compared the number of tax returns that resulted in refunds nationwide with the tax returns that resulted in refunds prepared by the defendants. And one of them compared the percentage of tax returns that took itemized deductions nationwide with the percentage of tax returns in which itemized deductions were taken prepared by the defendants. So it was in essence to give context to some of the numbers that the evidence showed with respect to these defendants, for instance. So in effect, if I understand it correctly, you are confirming what I said. The public record is 1304. Correct. But what the government did was to take data from 1304 and present it in a different way. Under 1006. Taking pieces from 1304 and then make a chart. Correct. Under 1006, which allows the government to do that if the evidence is voluminous, admissible, and the requirement escapes me off the top of my head, available for inspection, which it was. One other point is that the defendant could have and the defendant did quite extensively cross-examine and challenge the legitimacy of those comparisons. For instance, the defendant asked the government's witness who was presenting these charts and then argued in closing argument that national comparisons versus what was happening at this tax preparation business in Orange County were of little value. They also argued that it was of little value to compare the entire body of national returns with returns that were prepared by a tax preparer, since most returns, something like 50, 60, 70 percent of all returns, are not prepared for the tax preparer. They made those points. They made those arguments. And those arguments were very effective to some extent. Yeah, except the guy dragged them. Quite enough. Something you can think about in jail, right? Well, my point is we don't really have an answer to those questions. Those are fair points, and they are well-taken criticisms of the government's comparison. Turning to Mr. David's argument, the point I'd like to make there is Mr. David testified on direct examination, I would never tell anyone to falsify a document. And the very first or second question the government had on cross-examination was, Sir, you said on direct examination I would never tell anyone to falsify a document. Is that correct? Yes. Having confirmed that statement, the government then sought to cross-examine Mr. David with some of the specifics related to his theft conviction. In particular, the fact that to carry out his theft conviction, he falsified some documents. He falsified some credit card charge slips at Neiman Marcus in order to carry out the theft. Once David testified that he would never tell anyone to falsify a document, he put his credibility as to that point at issue. Now, does that mean that you are retracting what I viewed as a confession of error on page 32, if you're brief? I thought you said that it was error to rely on the police reports to let this stuff in. Is that wrong now? That's our 609A analysis, Your Honor. And I guess to some extent that's complicated by the fact that the government did not cite Oler in its brief, and we should have. And Mr. Weed stood up and took fault for that. That's certainly my fault in preparing the government's answering brief. I should have found and cited Oler to the court for the proposition that having raised his own theft conviction on direct examination, even after the motion in limine went against him, Mr. David could not now challenge that motion in limine on appeal. But that's what Oler says, and we've now cited it to the court in a 28-day letter, and the court can beat me with 100 lashes for not citing it in the brief. I also concede that under the current version of 609A2, it was improper for the district court to go outside the modified categorical approach of Shepard and Taylor and look to the police reports to determine whether the theft conviction was admissible in ruling on the motion in limine. We do concede that. Under the current version of 609A2, which was just enacted right before the trial commenced, that's improper. The court can't go outside the elements of the offense, essentially. But then what we're getting to now, Your Honor, really is the additional questioning about some of the collateral facts related to Mr. David's theft conviction, and those collateral facts are essentially the fact that he admitted that he falsified documents. And so your argument might be, well, we could ask him, and if he said, no, I didn't do it, you might be prevented from then introducing the conviction or the police reports. You can ask him, and he answers what he answers. Well, I think more pointedly, Your Honor, once Mr. David testified on direct examination, again, this is not something we elicited from him. We didn't trap him with it. Well, you kind of elicited by getting your favorable ruling. I'm talking specifically about this comment. I would never tell anyone to falsify a document, but we didn't elicit that question. And that is something that makes us very distinguishable from the situation that is discussed in the Kincaid-Chauncey case, which is an impeachment by contradiction case. And there are two different doctrinal strands under which I think the court could analyze, and maybe to some extent they're related, I'm not sure, the questioning of Mr. David about the falsification of documents with respect to the theft conviction. He either opened the door to that, or that's impeachment by contradiction. Maybe that's the same thing. But the fact that he volunteered on direct examination, I'm sorry, I would never tell anyone to falsify a document, open the door to the government's questioning related to the fast underlying theft conviction. I'm trying to figure out how the three cases cited in your two letters fit together. None of them are directed to our particular set of problems. They all seem to speak to different pieces of it. And I'm not really sure how I understand how they harmonize those. What's your take on that? Well, the first case that I think is Osazua. And Osazua, to some extent, tells the court, tells the government, when you're analyzing the admissibility of a prior conviction, you look at 609. Now, to some extent, we have two different issues. One, we have an older issue, which is maybe that issue's been waived. Second, we then have an issue related to the fact what really, I think, is at issue here is not so much the admissibility of the prior conviction, but some of the collateral questions that came in addition to the admissibility of the prior conviction about the underlying facts, about the falsification of documents. And the problem for me as I see this is that you may have a basis under Oler to get the conviction in. As Mr. Reed points out, there's still a question as to how extensive the cross-examination can be. And surely the cross-examination wasn't aimed at contradicting his acknowledgement of conviction. It was aimed at expanding the discussion more than Oler by itself might have permitted. Do I understand correctly you're saying that the expansion may not be permitted or justified by Oler, but is justified because of his separate answer to the other question with regard to wouldn't do a false? That's correct, Your Honor. I think it is justified by that. I think that by saying that he would never tell anyone to falsify a document, he in essence opened the door to cross-examination about some of the underlying facts to his death conviction, in which he did falsify a document. Osazawa, back to that for a second. Because it appears to build a wall between 609 and 608. Correct. And I guess Oler gives you a way to deal with that directly, but Oler doesn't speak so much to the expansion of the testimony. Should we read, I know your answer is going to be no, we shouldn't, but I'm wondering how you deal with the argument that I expect Mr. Wheat has started and will continue, that Osazawa should be read in such a way as to say, okay, maybe you have, you can get the fact of conviction, that objection's been waived, but the elucidation of the specifics behind the conviction shouldn't be permitted because that is in effect using a 608 kind of approach to the 609 problem. Well, there's something else about Osazawa and the other case Mr. Wheat mentioned, which is discussed extensively in Osazawa's sign. There's something else about both those cases which I think is worth noting, and I think it's very important. In both of those cases, the defendant testified and made accurate, truthful statements. In Osazawa, what he said was, I went to jail for one day. And that was accurate. It was an accurate, truthful statement. He went to jail for one day. And what the judge did in that case was said, you know, I think that that testimony, that he only went to jail for one day, minimized the prior conviction. So I'm going to allow the government to go into some collateral details of that prior conviction. And what Osazawa said is, look, the guy told the truth. He only went to jail for one day. In sign, the defendant was asked about a prior contempt citation, and he said a judge wrote up some bad things about me. Accurate. The judge wrote some very, very bad things about the guy. The district court allowed some very specific, detailed cross-examination about the specific findings that the judge had made. And here we don't have that. Well, on one level you do, although I understand the distinction. With regard to the conviction, there is not an allegation that he testified inaccurately. Absolutely not. It's about this other testimony. And the question really becomes, are you allowed to go into detail behind a conviction that otherwise you wouldn't be permitted to expand upon? I agree. Because of this other statement. And that's exactly what we argued in the district court when we went to sidebar. My co-counsel was actually handling this witness. My co-counsel said, Your Honor, he made a blanket statement. He opened the door, and Judge Sona said, I agree. He made a blanket statement. He opened the door to some questions. I'm going to allow it. Well, as I'm looking at this now, it's almost like the issue of 608 and 609 gets kind of canceled out in some degree. Because although there is a legitimate question about how far you can go, on the other hand, the order says you can't bring it up. So if you just kind of put that to the side, then you've got this, what I understand to be a separate question raised by his own counsel on direct. Correct. In which he made the statement, I think you said it was, I would never tell anyone to falsify a document. Correct. If that is an entirely separate issue, you've got to put that to the side. And the cross-examination about the prior, the details of the prior offenses proceeds on that prong. Doesn't that answer the question? In other words, can we ignore the problem of 608 and 609? Because this is really a separate prong that can be answered under this issue as far as harmless error is concerned. Well, I think putting harmless error to the side for just a moment, I think what I think I would ask the court to rule is that Judge Thelma did not abuse his discretion in allowing the government the latitude to ask questions about these facts in light of him opening the door with that blanket statement. I would be arguing that, frankly, if these underlying facts did not pertain to a conviction at all. If these were underlying facts that dealt with some sort of event that was not related to a conviction, and he had made that kind of blanket statement, we would have asked the court. And the question never comes up whether or not you can actually introduce the police reports, because he simply answers the question. Correct. And tells you more or less what's in the police reports. Correct. The police report question may be the real hard one, but you don't have that here. Fortunately, no. Although I may have. Fortunately for you. Fortunately for me, yes. I suppose I may have responded with three or four more 28J letters instead of my own personal record. But one final thought, which is to the extent the court rejects the government's argument on opening the door or impeachment by contradiction, this would nonetheless be harmless error. As a couple of the panel have noted, there was other evidence against this defendant that was overwhelming. And the testimony about the prior conviction, frankly, wasn't even the most damaging part of the cross-examination. But with that, I'm submitting. Thank you. One minute each for response, if you want it. Okay. Could I use my minute? You can use your minute. You can use your co-counsel's minute, too. Because there's just one thing that I wish to pull the court's attention to, and that is on page 346 of the appellant's excerpts of record is the actual transcript of what happened when David's trial lawyer objected to the line of questioning. And if I could just read a few lines. The government said, Your Honor, I intend to ask him if he would never tell anyone to falsify a document. In other words, referring to that statement. Under 608, it's appropriate he put credibility at issue with the few brief questions that he, in fact, falsified documents. The court, I think it opens the door. And then the defendant's trial lawyer, respectfully, Your Honor, it was in connection of tax returns that he asked him that question. In other words, tax returns, not what happened. Do you have the earlier testimony so that we can actually know what he did say, whether the judge's recollection is correct or Mr. McDonald's recollection is correct? Now, that earlier testimony would be at page 307 of the excerpts of record near the top there in line 7. So I would never. So I would have never told anyone to falsify a document. Hang on a second. Let me back up and see what the question is. OK. That's at page 307, line 7. I understand that. I'm trying to back up and see what he's responding to. OK. On the second page, if I may, it was a time to gather records. Was he told to do that? Did he respond to that? Absolutely. And the thing is, like some people, the stuff people did, and people were like, he doesn't talk very well. I don't know. I don't speak for you. I understand that. I can see that they're saying. But at the same time, they didn't have it. Sam would have told me that.  They had to wait for an adjustment letter. So I never would have told anyone to falsify a document. Well, he's talking about tax returns. But boy, it's not in response to a direct question that's narrowly addressed to that. OK, I got it. Thank you. Now, my only argument, and then I'll sit down after this, is that it's not enough that it's a blanket statement. What he had to say in order to go forward under 609 would relate to the prior conviction. And I would never tell anyone to falsify documents that didn't relate to the prior conviction. And so that's all I have to say. Thank you. Thank you. Thank both sides for their arguments.
judges: Fletcher W. , Clifton, Smith M.